UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                        Crim. No. 05-339 (PAM/RLE)

                Plaintiff,

v.                                                               **MEMORANDUM AND ORDER**

Ramon Arceo-Arteaga,

                Defendant.

---

This matter is before the Court on Defendant's Objections to the Report and Recommendation ("R&R") of Chief Magistrate Raymond L. Erickson dated December 9, 2005. The R&R recommends that the Court deny Defendant's Motion to Suppress Evidence. As required, the Court has conducted a de novo review of the record. See 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). Based on that review and after carefully considering Defendant's Objections, the Court concurs with the conclusions of the Magistrate Judge and adopts the R&R.

**BACKGROUND**

Defendant is charged with one count of illegal re-entry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(2), and 6 U.S.C. §§ 202 and 507. Defendant was deported from the United States after he was convicted for conspiracy to distribute heroin. On approximately September 12, 2005, Defendant was found to have re-entered the United States illegally.

Herbert J. Fineday, a former Sergeant with the Fond Du Lac Indian Reservation Tribal Police Department, was patrolling an area on the Reservation on September 12, 2005, and was

waved down by three people walking on the side of the road. One of the people, Garrett Defoe, told Fineday that an unknown man was walking around in a wooded area owned by Jeff Northrup. Fineday believed that Defoe was speaking on behalf of Northrup, who was walking with him. Defoe said that the unknown man had been driving a blue car with Missouri license plates. On the way to Northrup's property to investigate the possible trespass, Fineday saw a blue Monte Carlo with Missouri plates parked in the driveway of a residence belonging to Melissa Greensky. Fineday parked behind the car and ran a check on the license plates, which revealed the car was registered in Missouri. During the check, Fineday saw Defendant walk around from behind Greensky's house. Fineday exited his car, approached Defendant, and identified himself as a police officer. Defendant said he was visiting a person named "Boogit." Fineday did not recognize the name, and he asked Defendant for identification. Defendant produced a Mexican driver's license, but he did not have a passport, resident alien card, visitor's visa, or any other form of identification. Fineday knew that a Mexican driver's license did not authorize Defendant to drive in the United States. Moreover, the name on the driver's license did not match the name on the car's registration. Fineday instructed Defendant to sit in the back of the squad car, but he was not handcuffed or restrained.

Because Defendant spoke only Spanish and Fineday spoke only English, communication between the two was difficult. Fineday therefore contacted his dispatcher for the United States Border Patrol's phone number. Fineday called a Border Patrol agent and described the situation. The agent and Defendant then spoke in Spanish over the phone. After the conversation, the agent told Fineday that he did not intend to take any action but that Fineday

could arrest Defendant on a local charge if appropriate. Fineday ran a check of Defendant's name through the National Crime Information Center ("NCIC") database and learned of Defendant's previous conviction and deportation. Fineday contacted the NCIC to verify that Defendant should be taken into custody. An NCIC agent instructed Fineday to do so, and Fineday placed Defendant under arrest.

During the interaction between Fineday and Defendant, Greensky was present in her home. However, Greensky testified that she did not know Defendant's name and that he was not on her property to see her.

Magistrate Judge Erickson found that the initial encounter between Fineday and Defendant was consensual and therefore did not invoke the protections of the Fourth Amendment. Notably, when Fineday parked his car behind Defendant's vehicle, Defendant was behind Greensky's house and probably unaware of the officer's presence. The Magistrate Judge disregarded Fineday's subjective intent to arrest Defendant for trespassing. Magistrate Judge Erickson recounted that when Fineday first questioned Defendant about his identity, he did not make any show of authority or restrain Defendant. Because Defendant's Mexican driver's license did not authorize him to drive in the United States, Fineday was justified in detaining Defendant while he investigated his suspicion of criminal activity, according to the Magistrate Judge. The R&R ultimately recommended denying the Motion to Suppress Evidence.

**DISCUSSION**

Defendant objects to the R&R on two, overlapping grounds. First, he objects to the

finding that Fineday's stop of Defendant was a consensual encounter rather than an investigatory detention. Second, Defendant argues that Fineday effectively seized him when he blocked his vehicle in Greensky's driveway. The Court finds both of Defendant's Objections without merit.

Not all contacts between an individual and an officer implicate the Fourth Amendment. United States v. White, 81 F.3d 775, 779 (8th Cir. 1996) (citing Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)).

> A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area–even if the officer has no reason to suspect the individual is involved in criminal activity–provided the officer does not indicate that compliance with his request is required.

Id. (citing Florida v. Bostick, 501 U.S. 429, 434-35 (1991)). If a reasonable person would feel free to terminate the encounter, the interaction is consensual, not a seizure. Id. (citing Bostick, 501 U.S. at 434). Here, Fineday approached Defendant as he walked from behind Greensky's house. Fineday identified himself and asked Defendant for his identification. There is no evidence that Fineday used a threatening tone, brandished a weapon, or touched Defendant. Fineday was the only officer present on the scene. These circumstances are indicative of a consensual encounter. See id. (citations omitted).

Turning briefly to Defendant's second Objection– that Fineday effectively seized him by blocking his vehicle in the driveway– the factual record does not support Defendant's argument. As noted in the R&R, the record does not reflect whether Fineday's car was positioned so that Defendant would have been unable to leave. Importantly, the record does

not indicate that Defendant even knew Fineday had parked behind him, which is especially relevant given that the encounter occurred in the back or on the side of Greensky's house. Additionally, considering that Defendant was walking behind the house, and had been for an hour, he could have walked away.

Considering all of the circumstances, the Court cannot conclude that Fineday exhibited a show of force so that a reasonable person would have believed he was not free to terminate the encounter. Consequently, the interaction thus far was consensual in nature. Further, contrary to Defendant's Objections, Fineday's subjective intent to investigate a possible trespass did not affect the consensual nature of the encounter, even if the Fourth Amendment were to apply. See Whren v. United States, 517 U.S. 806, 813 (1996) (finding that an officer's subjective intent is irrelevant to a Fourth Amendment analysis).

After Fineday asked Defendant for identification, Defendant produced a Mexican driver's license, which did not authorize him to drive in Minnesota. Defendant could not produce any documents showing that he was legally in the United States. At this time, the consensual nature of the encounter ended because Fineday had an objectively reasonable suspicion that Defendant was not lawfully allowed to drive or to be present in the United States. Based on this suspicion, Fineday was justified in detaining Defendant by instructing him to sit in the back of the squad car while Fineday continued his investigation. Cf. United States v. Perez-Sosa, 164 F.3d 1082, 1084 (8th Cir. 1998) (finding actual probable cause to arrest individual for transporting illegal aliens when passengers in vehicle did not speak English and could not produce resident alien cards, green cards, or passports). Fineday's investigation

confirmed his suspicion that Defendant was unlawfully in this country, giving him probable cause to arrest Defendant.

**CONCLUSION**

The Court has conducted a de novo review of the record. Based on that review and after carefully considering Defendant's Objections, the Court **ADOPTS** the R&R (Clerk Doc. No. 27). Accordingly, based on the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence (Clerk Doc. No. 14) is **DENIED**.

Dated: January 4, 2006

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge